NEW JERSEY MISCELLANEOUS REPORTS. 447

N. J. Dept. Labor—Pine v. Terry & Tench Co.

NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

EMMA L. PINE, PETITIONER, v. TERRY & TENCH COMPANY,
RESPONDENT.

Petitioner's Husband Sustained an Injury to His Foot Through
Burning—Later, He Died From the Effects of an Operation
For Appendicitis, and it is Now Alleged That He Also Sus-
tained Other Injuries as the Result of a Fall at the Time
the Foot was Burned—Held, on Testimony Offered, That
Death was Not Result of Injury Received During Employ-
ment.

On findings of fact and determination and rule for judg-
ment.

For the petitioner, *Nathan Rabinowitz.*

For the respondent, *Carl S. Kuebler,* of *McDermott, En-
right & Carpenter.*

\*        \*        \*        \*        \*        \*        \*

I have carefully considered the testimony and the briefs
of the attorneys for the respective parties. I find that James
E. Pine was employed by Terry & Tench Company on or
about July 25th, 1926. I find, however, that the death of
James E. Pine was not the result of any injuries sustained
in any accident arising out of and in the course of his em-
ployment. I find that James E. Pine did sustain an injury
on July 25th, 1925, which consisted of a burn to his right
foot, but that said injury and said accident have no relation
whatsoever to the claim set forth in this petition and have no
relation to the death of James E. Pine, nor is there any
testimony in the case connecting said injury with his death.

The petitioner attempts to show in this case that at the
same time James E. Pine burned his foot by sparks from
his acetylene torch, he fell over an iron girder, sharply
striking his right side; that this occurred on July 25th,

1925; that on July 29th, 1925, he was taken with an attack of appendicitis; was operated upon July 30th and died August 6th, and that the attack of appendicitis was of traumatic origin and brought about by traumatism to his right side on July 25th, 1925. This, I do not believe. The petitioner's case is based to a large extent upon the testimony of William G. Little, who was Mr. Pine's helper. I was not impressed and do not believe the testimony of Mr. Little. If Mr. Pine was leaning over the truss as stated by Mr. Little at the time the hot metal struck his foot, he certainly could not have fallen any distance sufficient to have caused an injury to his right side. If Mr. Pine had suffered a fainting spell. as Mr. Little contends, it would have been impossible for him to remain in the position he was in or for him to have left the place where he was working, as he did. Mr. Little testified, page 143, as follows:

"*A.* I said 'what happened?' He said, 'I hurt myself. I burned myself.' He was holding his stomach. And he took up his shirt to see if it was burned; he took up his shirt and there was a big red spot on him. In the meantime the burn hurt him. And I took him down and some of the other boys helped him."

I cannot for one moment believe that Mr. Pine, with a fairly severe burn on his foot, which must of necessity have caused him immediate pain, would have pulled up his shirt and showed his side to Mr. Little. I was more than ever convinced that there was no injury to Mr. Pine's side by the letter of Doctor O'Brian, which he sent to the United States Fidelity and Guaranty Company on August 20th, 1925, in which letter he has stated: "I examined it closely, and finding no external marks of violence, did not mention it in my report."

It is true that Doctor O'Brian, himself, testified in this case that he did observe a red mark on Mr. Pine's side on the afternoon of July 25th. I am inclined, however, and do place more reliance upon the statement in his letter of August 20th, 1925, than I do upon his testimony. His testimony was contradictory and did not impress me. There

were also many discrepancies in the testimony of Mr. Little which made me still further discredit it.

I was very much impressed by the testimony of Mr. Frank M. Tench, the superintendent of Terry & Tench Company, and Mr. Charles P. Smith, the foreman. I feel certain that if Mr. Pine had sustained an injury to his right side, such as is contended by the petitioner, he would have made mention of that fact to Mr. Tench and to Mr. Smith, especially if it had been so severe as to cause him to immediately exhibit his side to Mr. Little. I thoroughly believe that Mr. Tench in his testimony gives us an accurate account of what happened on July 25th, which is corroborated by the testimony of Mr. Smith to the extent of what came to his attention on that day. This testimony is further strengthened by the testimony of Miss Sheldon, the nurse in the office of Doctor McBride. She is an absolutely disinterested witness in this case. Mr. Pine was sent to her and his object, of course, in going was to secure treatment and alleviation of pain and suffering. If he had injured his side, I feel certain that he would have told her and have requested some treatment for it.

In view of all this testimony and many other phases of the case, too numerous to mention, I conclude that Mr. Pine's death was not the result of any accident arising out of and in the course of his employment on July 25th, 1925, and that he did not sustain an injury to his right side on that date.

I also conclude and find that Mr. Pine's death was the result of natural causes. The testimony of Mr. Tench convinced me that Mr. Pine was not working on July 22d, 23d and 24th, the three days immediately prior to the date of the alleged injury, and that he did work Monday, Tuesday and Wednesday following July 25th, which was a Saturday. At the bottom of page 329 of the record, Doctor O'Brian testified that when the operation was performed his appendix was bound down by a great many dense adhesions and testified "it indicated that the man has had trouble there before, and it was a chronic appendix that had become acute." He admitted that this had probably existed for some time, a month or longer, and that said adhesions were sufficient to

have caused attacks prior to July 29th, 1925. At the bottom of page 333 he testified as follows:

"*Q.* Then, in your opinion, doctor, it is possible that when the man was out of work, July 22d, 23d and 24th, prior to the time he burned his foot, that he might have been out by reason of some trouble with his appendix?

"*A.* Is that possible? I suppose it is possible."

I also refer especially to the testimony of Doctor O'Brian on pages 335 and 336 of the record.

"*Q.* Now, when a man has an appendix with dense adhesions, such as are found in this case, and such as you have testified to to-day, it is possible and probable is it not that his appendix would light up at any minute?

"*A.* With some reason it would. If he had any just cause for it.

"*Q.* Well, the reason that an appendix lights up is because of an increased inflammation, isn't it?

"*A.* Yes, sir.

"*Q.* And in every case of appendicitis, the reason that the appendix lights up is because of an increased inflammation, isn't it?

"*A.* Yes, sir.

"*Q.* Then in this case where this appendix did light up on the 29th of July, it was because of increased inflammation?

"*A.* Yes, sir.

"*Q.* All abscesses surrounding the appendix are brought about, are they not, by internal inflammation?

"*A.* Yes, sir.

"*Q.* They originate from a germ, do they not?

"*A.* Yes, sir.

"*Q.* And independent of any history of traumatism, is it not probable that an appendix, in a condition which you have described this appendix to have been in when you operated, would have lit up at any minute upon increased inflammation from within?

"*A.* Probable or possible.

"*Q.* Probable.

"*A.* It might; yes."

It is very probable that Mr. Pine's absence from work just prior to July 25th was due to the condition of his appendix, and I find from the testimony of Doctor O'Brian that his appendix was in such condition that an acute attack was to be expected at any moment. The testimony of Doctor Arlitz and Doctor Finke supports this finding. I feel that the attack on July 29th, happening so close to the date of the accident to Mr. Pine's foot, was a mere coincidence and had no relation to any accident he sustained on that date.

While there are other reasons for my conclusions, I believe the above are the most important and sufficient to show the grounds for arriving at my opinion.

In view of the fact that Mr. Pine's death, in my opinion, was not due to any injury sustained from an accident arising out of and in the course of his employment with this respondent, it will be unnecessary for me to consider the other phases of the medical testimony brought out at the hearings or for me to determine the question of dependency or the deceased's salary.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

HARRY J. GOAS,
*Deputy Commissioner.*